IN THE DISTRICT COURT OF THE UNITED STATES FOR THE

MIDDLE DISTRICT OF ALABAMA, NORTHERN DIVISION

PENNSYLVANIA NATIONAL       )
MUTUAL CASUALTY INSURANCE    )
COMPANY,                     )
                             )
    Plaintiff,           )
                             )        CIVIL ACTION NO.
    v.                   )          2:12cv994-MHT
                             )             (WO)
WATTS BUILDERS, L.L.C.;      )
et al.,                      )
                             )
    Defendants.          )

OPINION

Relying on the Declaratory Judgment Act of 1934, 28

U.S.C. § 2201, plaintiff Pennsylvania National Mutual

Casualty Insurance Company brought this federal lawsuit

against defendants Watts Development Company, Inc., Watts

Builders, L.L.C., Watts Homes, L.L.C., and numerous

individual homeowners.  Penn National seeks a declaration

that it owes no duty to defend or indemnify the the Watts

entities with regard to the state lawsuit brought against

them by the homeowners.  Jurisdiction is proper pursuant

to 28 U.S.C. § 1332 (diversity).  This matter is now

before the court on Penn National's motion for summary judgment. The court is confronted with the following issue: whether Penn National is entitled to a finding that the three Watts entities breached their insurance by failing to give to the insurance company timely notice of a state-court lawsuit filed against them by the homeowners and, thus, to a declaration that the insurance company owes no duty to defend or indemnify the Watts entities with regard to the state lawsuit. The court holds that Penn National is entitled to such a finding and declaration.

## I. BACKGROUND

This case arises out of the construction and sale of houses. Ted Watts was president of Watts Development Company, Inc., which in turn was the sole member of two limited liability companies, Watts Builders and Watts Homes. These three Watts entities sold houses in a

2

subdivision in Montgomery, Alabama, to the individual homeowners between 2006 and 2009.[1]

Apparently there were problems with the homes. A group of homeowners, including but not limited to the homeowners in this case, sued Mr. Watts and the Watts entities in state court.[2] The essence of the state complaint appears to be that faulty construction has led to moisture damage and the need for other repairs. Some of the homeowners filed the initial state suit on

_____

1. The individual homeowner-defendants are: Dedric J. Belcher, Jim D. Windes, Elizabeth J. Windes, Evonne M. Jackson, John N. Drosyk, Jessica M. Drosyk, Jeffrey L. Smyth, Eva L. Randolph, Robert S. Genin, Carla B. Genin, Clifford Jennings, Veronica Jennings, Tangy Y. Brantley, Geneva Lyons, Peter Colberg, Kathy Colberg, Idalia Williams, Jermel D. Miller, Juandolyn B. Stringer, Ameaila R. Cunningham, Timothy Cunningham, Bertha Cunningham, Joyce Ridgeway, Jessica Weber, and Aaryn Urell. Penn National argues that some of the homes were sold before this period, but the record does not support that contention.

2. The state complaint also names other defendants, but not Penn National. It makes claims of negligence in construction; negligence in hiring, supervision, and training; misrepresentation; suppression; breach of implied warranty of habitability; breach of contract; breach of express warranty; negligence in repairs; negligence; and fraudulent inducement.

3

December 29, 2010.  The state complaint was amended on three occasions, the last of which was October 29, 2012, and other plaintiffs were added.

On March 10, 2011, an attorney representing Mr. Watts in his bankruptcy proceedings filed a notice with the state court on his behalf; neither Mr. Watts nor the Watts entities had appeared in the state proceedings at this point.  The notice indicated that Mr. Watts had filed for personal bankruptcy and suggested the case be stayed.  Mr. Watts was dismissed from the state case, and the Watts entities later appeared.  The case is currently pending in state court.

On April 14, 2011, Mr. Watts's attorney filed in the bankruptcy proceedings a list of creditors with claims against Mr. Watts.  All of the homeowners in this case were listed as creditors, as were the attorneys who represent the homeowners in both the state suit and the instant federal action.  During an on-the-record telephone conference in this matter held on February 18,

4

2014, counsel for the homeowners acknowledged that Mr. Watts's bankruptcy attorney knew of the existence of the state lawsuit as of the April 14 filing.

The final page of the list filed in the bankruptcy court contains a declaration by Mr. Watts himself, under penalty of perjury, that the list was true and correct to the best of his knowledge.[3]  At the February 18, 2014, telephone conference, counsel for the homeowners agreed that this declaration was not fraudulent and that Mr. Watts's attorney was authorized to file it on Mr. Watts's behalf.

Penn National insured all three Watts entities.  It issued consecutive Commercial General Liability polices to Watts Development Company, Inc., from 2001 to 2010. The other two entities were added to those policies as

---

3. Mr. Watts's declaration was signed electronically. Pursuant to Rule 9011-1(b) of the local rules of the United States Bankruptcy Court for the Middle District of Alabama, this electronic signature indicated that Mr. Watts' attorney had certified that he maintained a hard copy of that document with Mr. Watts's conventional signature.

named insureds.  Penn National also issued Commercial Umbrella Liability policies to Watts Development from 2002 to 2008, again adding the other entities as named insureds.  Those policies provide for the duties to defend and indemnify the Watts entities at issue in this case.  Each of those policies also imposed timely notification requirements on the Watts entities.

Under the Commercial General Liability policies, the Watts entities were required to notify Penn National "as soon as practicable" of an "occurrence," defined as "an accident, including continuous or repeated exposure to substantially the same harmful conditions"; to notify Penn National "as soon as practicable" of any claim or suit against them; and to "[i]mmediately" send Penn National legal papers received in connection with a claim or suit against them.[4]

---

4. Defendant's Motion for Summary Judgment, Exh. A (Doc. No. 35-1) at 110, 114; Exh. B (Doc. No. 35-2) at 19, 23; Exh. C (Doc. No. 35-3) at 93, 97; Exh. D (Doc. No. 35-5) at 28, 32; Exh. E (Doc. No. 35-7) at 88, 92; Exh. F (Doc. No. 36-2) at 20, 24; Exh. G (Doc. No. 36-4) (continued...)

The Commercial Umbrella Liability policies from 2002 to 2006 similarly require the insured entities to "promptly" notify Penn National of any occurrence, to give "prompt written notice" of any claim or suit against the insureds, and to comply with the terms of the underlying insurance, in this case the Commercial General Liability policies.[5]  The Commercial Umbrella Liability policies from 2006 to 2008 mirrored the notification requirements in the Commercial General Liability policies.  Under each of the policies, it is undisputed that notice to Mr. Watts would constitute notice to each of the entities.

The Watts entities first notified Penn National of this claim on March 22, 2012.  Penn National has been defending the Watts entities in the state proceedings,

---

4(...continued)
at 130, 134; Exh. H (Doc. No. 36-6) at 25, 29; Exh. I (Doc. No. 36-7) at 112, 116; Exh. J. (Doc. No. 36-10) at 23-4, 27.

5. Defendant's Motion for Summary Judgment, Exh. K (Doc. No. 37-1) at 20; Exh. L (Doc. No. 37-2) at 20; Exh. M (Doc. No. 37-3) at  36; Exh. N (Doc. No. 37-4) at 34.

pursuant to a reservation of the right to contest its duties under the insurance policies.

In short, the critical chronology of this case is as follows: <u>December 29, 2010</u>: The state lawsuit was filed. <u>March 10, 2011</u>: Mr. Watts's attorney filed a notice of bankruptcy in the state lawsuit. <u>April 14, 2011</u>: Mr. Watts's attorney filed a document listing the homeowners and their attorneys as creditors in the bankruptcy proceedings, along with a declaration from Mr. Watts attesting to the correctness of that list. <u>March 22, 2012</u>: The Watts entities notified Penn National of the state suit.

Penn National filed this lawsuit for a declaratory judgment that it has no duty to defend or indemnify the Watts entities. It named as defendants those entities and some, but not all, of the homeowners who are plaintiffs in the state suit. The homeowners have oppose Penn National's declaration. The Watts defendants have not appeared.

8

## II. PENN NATIONAL'S MOTION FOR SUMMARY JUDGMENT

Penn National has filed a motion for summary judgment, arguing that it is entitled to a declaration of no obligation to defend or indemnify the Watts entities because they failed to give timely notification of the underlying occurrences and state suit, in violation of the requirements of the insurance policies.

"A party may move for summary judgment, identifying each claim or defense--or the part of each claim or defense--on which summary judgment is sought.  The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The court must view the admissible evidence in the light most favorable to the non-moving party and draw all reasonable inferences in favor of that party.  Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).  Moreover, although the Watts entities have not opposed Penn

National's summary-judgment motion, this court is still obligated to determine independently whether the motion is due to be granted.[6] See <u>Livernois v. Med. Disposables, Inc.</u>, 837 F.2d 1018, 1022 (11th Cir. 1988).

"'[T]he failure of an insured to comply within a reasonable time with ... conditions precedent in an insurance policy requiring the insureds to give notice of an accident or occurrence [or suit] releases the insurer from obligations imposed by the insurance contract.'" <u>Travelers Indem. Co. of Connecticut v. Miller</u>, 86 So. 3d 338, 342 (Ala. 2011) (quoting <u>Reeves v. State Farm Fire & Cas. Co.</u>, 539 So.2d 252, 254 (Ala. 1989)). Thus, if Penn National can establish an unreasonable delay, it is released from its obligation under the insurance contracts.

"Only two factors are to be considered in determining the reasonableness of a delay in giving notice to the

---

6.   Although the Watts entities have not entered an appearance in this federal lawsuit, Penn National has not sought a default judgment against the Watts entities.

10

insurer: the length of the delay and the reasons for the delay." Id. (citing United States Fid. & Guar. Co. v. Baldwin County Home Builders Ass'n, 770 So.2d 72, 75 (Ala. 2000)).

The first factor is the length of the delay. Miller, 86 So. 3d at 342. There is no dispute about the date on which the Watts entities gave notice to Penn National: March 22, 2012. Nor is there any claim that Penn National had actual notice before that time. The critical question is the date on which the Watts entities themselves received notice.

The court concludes that Mr. Watts, and through him the Watts entities, had notice as of April 14, 2011.[7] On

---

7. Penn National argues that the Watts entities had notice of the suit and the "occurrence" even earlier, but that conclusion is not supported by the record (except perhaps as discussed above regarding the March 2011 filing in the state court). Indeed, it is not even clear what Penn National believes the relevant "occurrence" to be. See Town & Country Prop., L.L.C. v. Amerisure Ins. Co., 111 So. 3d 699, 706 (Ala. 2011). In any event, the court has concluded that the delay, even starting April 14, 2011, was unreasonable. Therefore, whether the Watts entities had earlier notice is not material to the
(continued...)

that date, Mr. Watts's bankruptcy attorney submitted the list of creditors, including all of the homeowner defendants in this case as well as their counsel. Attached to that list was a declaration from Mr. Watts himself that the list was true and correct. Counsel for the homeowners has conceded that the bankruptcy attorney was aware of the state lawsuit at this point and was authorized to file Mr. Watts's declaration, which was not fraudulent. Thus there is no genuine dispute: Mr. Watts knew of the existence of the state lawsuit as of April 14. Indeed, this conclusion is bolstered by the fact that, even before April 14, the same attorney representing Mr. Watts submitted a notice to the state court that Mr. Watts was in bankruptcy proceedings, establishing that the attorney knew of the state suit at that time. It is not disputed in this litigation that notice on Mr. Watts would constitute notice on the

---

7(...continued)
outcome of this case.

entities.   Therefore, the Watts entities had notice of
the state suit as of April 14, 2011.

The homeowners argue that the Watts entities did not
have notice of the suit until a later date.   They note
that the Watts entities filed a motion to set aside the
default in the state court because of improper service on
them in those proceedings.   They claim (without citation
to evidence) that service was finally perfected only on
March 19, 2012, just three days before the Watts entities
notified Penn National.   But the issue here is not proper
service under Alabama civil procedure, but actual notice
under the terms of the insurance policies.

The homeowners argue that Mr. Watts did not know the
details of the lawsuit, including any allegations in it,
and had not seen a copy of the complaint until he was
served on March 19, 2012.   But, even if this were true,
the insurance policies do not limit the insureds'
notification obligations to instances in which the
insured knows the details of a case or has seen a
complaint.   Rather, the policies all require the insureds

13

to notify Penn National either "as soon as practicable" or "prompt[ly]" when a suit is brought against them. See, supra, notes 4, 5. In other words, the insurance policies required the Watts entities to notify Penn National once they had actual knowledge of the existence of a lawsuit against them.

There is no genuine dispute: Mr. Watts had actual knowledge of the state lawsuit at the time the list of creditors was filed in his bankruptcy proceedings. And, therefore, it is undisputed that the Watts entities had notice at the same time.

Therefore, the period of delay established by the record is April 14, 2011, when Mr. Watts filed a notice in the state-court case, to March 22, 2012, when the Watts entities notified Penn National of the suit. This length of delay, just under one year, is sufficient to require some reasonable explanation. See Nationwide Mut. Fire Ins. Co. v. Estate of Files, 10 So. 3d 533, 536 (Ala. 2008) (five-month delay necessitated explanation); Pharr v. Cont'l Cas. Co., 429 So. 2d 1018, 1019 (Ala.

1983) (same, eight-month delay); <u>S. Guar. Ins. Co. v. Thomas</u>, 334 So. 2d 879, 883 (Ala. 1976) (same, six-month delay).  Where the insured fails to offer a reasonable excuse for such a protracted delay, the insurer is entitled to judgment as a matter of law.  <u>Pharr</u>, 429 So. 2d at 1020; <u>Thomas</u>, 334 So. 2d at 885.

Here, the Watts entities have offered no excuse or explanation at all.  This is unsurprising, as they have not entered an appearance or made any filings in this case.  This circumstance does give the court some pause: for the Watts entities have appeared in the state court proceedings, and might well have a reasonable explanation for their failure to notify Penn National.  However, they had the opportunity to appear in this case, and declined to do so.  Furthermore, the homeowners had the opportunity to seek discovery on this question.  They could have presented evidence of some explanation for the delay to this court.  They did not do so.  On the record presented, the court has no choice but to find the Watts entities' delay unreasonable as a matter of law.

15

Penn National is therefore entitled, first, to a finding that the Watts entities breached the insurance policies by failing to give timely notice of the state-court lawsuit and, thus, second, to a declaration that the insurance company owes no duty to defend or indemnify the Watts entities with regard to that lawsuit.

To be sure, in an opinion entered on May 7, 2013, this court found that a declaratory determination of Penn National's duty to indemnify was not yet ripe. Pennsylvania Nat. Mut. Cas. Ins. Co. v. Watts Builders, L.L.C., 2013 WL 1908358 (M.D. Ala. 2013) (Thompson, J.). The court was incorrect.

As this court has explained, "'Because this lawsuit has been brought under the Declaratory Judgment Act and because it has been brought in federal court, an issue of ripeness that may be peculiar to federal courts is raised.'" Auto-Owners Ins. Co. v. Toole, 947 F. Supp. 1557, 1565-66 (M.D. Ala. 1996) (Thompson, J.) (quoting Guaranty National Insurance Company v. Beeline Stores, Inc., 945 F. Supp. 1510, 1514 (M.D. Ala. 1996) (Thompson,

16

J.)).   The Constitution restricts the exercise of judicial power to "cases" and "controversies."   U.S. Const. art. III, § 2. As the court noted in Auto-Owners, "The Declaratory Judgment Act, 'in its limitation to "cases of actual controversy," manifestly has regard to the constitutional provision,'" and therefore "'is operative only  in respect to controversies which are such in the constitutional sense.'"   Id. (quoting Aetna Life Ins. Co. v. Haworth, 300 U.S. 227, 240–41 (1937)).

As the Supreme Court has observed, "the question in each case is whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment."   Maryland Casualty Co. v. Pacific Coal & Oil Co., 312 U.S. 270, 273 (1941).   "It is immaterial that frequently, in the declaratory judgment suit, the positions of the parties in the conventional suit are reversed; the inquiry is the same in either case."   Id.

This case is controlled by Maryland Cas. Co. There, the Supreme Court found a sufficient controversy where an insurance company sought a declaration that it had no duty not only to defend but also to indemnify its insured with regard to an accident with a third party. The Court stated that "It is clear that there is an actual controversy between petitioner [insurer] and the insured." Maryland Cas. Co., 312 U.S. at 274.

Admittedly, this court has on occasions found that a request for a declaration as to a duty to indemnify in an underlying state-court case was not ripe absent a final judgment in that underlying case. For example, in Beeline, the court stated that, "the question of whether Guaranty National might ultimately be responsible for indemnifying Beeline against any losses accruing in that lawsuit is not timely before brought before this court." Beeline Stores, Inc., 945 F. Supp. at 1516. In Beeline, the court stated that, "Although the existence of a duty to defend may be established by the allegations in the injured party's complaint, the insurer's liability to the

18

insured is ultimately established by what is developed at trial." Id. at 1514.  As a result, the court explained, "a determination of the duty to indemnify cannot be made at a preliminary stage in the proceedings, when it is still possible for the plaintiff in the underlying lawsuit to change the theory of liability and assert a claim that is covered by the policy at issue." Id.

No similar circumstances are presented with regard to Penn National's declaratory request here: there is no concern that the facts underlying the duty to indemnify may change.  This court is not confronted by situation in which subsequent discovery or litigation in the state-court proceeding the homeowners have against the Watts entities could yield a substantially different claim and thus alter the basis for the insurance company's duty to indemnify.  Rather, Penn National's argument with regard to its duty to indemnify has nothing to do with the substance of the homeowners' claim in state court and instead relies only on the entities' failure to notify.

Any potential future alterations in the homeowners' state-court claims are irrelevant to this argument.

The court has not overlooked that Penn National's request for a declaration as to its duty to indemnify is brought pursuant to the Declaratory Judgment Act, which states that a court "may declare the rights and other legal relations of any interested party seeking such declaration." 28 U.S.C. § 2201 (emphasis added). The Supreme Court has "repeatedly characterized the Declaratory Judgment Act as 'an enabling Act, which confers a discretion on the courts rather than an absolute right upon the litigant.'" Wilton v. Seven Falls Co., 515 U.S. 277, 287 (1995) (quoting Public Serv. Comm'n v. Wycoff Co., 344 U.S. 237, 241 (1952)).

> "'[T]here is ... nothing automatic or obligatory about the assumption of "jurisdiction" by a federal court' to hear a declaratory judgment action. ... Consistent with the nonobligatory nature of the remedy, a district court is authorized, in the sound exercise of its discretion, to stay or to dismiss an action seeking a declaratory judgment before trial or after all arguments have drawn to a close. In the declaratory

> judgment context, the normal principle
> that federal courts should adjudicate
> claims within their jurisdiction yields
> to considerations of practicality and
> wise judicial administration."

<u>Wilton</u>, 515 U.S. at 288 (quoting E. Borchard, Declaratory

Judgments 313 (2d ed. 1941)) (footnote omitted).   Here,

because Penn National's duty to defend and its duty to

indemnify turn on the same question--whether the Watts

entities satisfied the notice requirements under the

insurance contracts--the court sees no reason why a

declaration is warranted in the first instance but not in

the second.   "[C]onsiderations of practicality and wise

judicial administration" do not warrant otherwise.

<u>Wilton</u>, 515 U.S. at 288.


## III. HOMEOWNERS' STANDING

Finally, the court turns to Penn National's

contention that, although it has sued the homeowners in

this federal lawsuit, they still lack standing to

challenge the declaratory relief requested by the

insurance company. The court now offers these observations with regard to Penn National's contention.

First, Maryland Cas. Co., would seem to suggest that the homeowners do have standing. There, the Supreme Court found a case or controversy between the insurer and the alleged victim, despite the fact that the underlying suit between the insured and the alleged victim had not yet proceeded to judgment. Maryland Cas. Co., 312 U.S. at 271-4. The Court noted at least two reasons. First, it explained that, where the issue is notice to the insurer, the alleged victim in the underlying lawsuit "may perform the conditions of the policy issued to the insured requiring notice of the accident, notice of suit, etc., in order to prevent lapse of the policy through failure of the insured to perform such conditions." Id. at 273; cf. Miller, 86 So. 3d at 342-347 (reviewing Alabama law regarding the ability of alleged victims to provide notice under insurance contracts). Thus, as a general proposition the interests of the alleged victim

in the insurance policy cannot be absolutely and unconditionally written off.

In any event, the Court raised a concern arguably more applicable here: conflicting outcomes in federal and state proceedings. The Court explained that: "It is clear that there is an actual controversy between petitioner [insurer] and the insured. If we held contrariwise as to [alleged victim] Orteca because, as to him, the controversy were yet too remote, it is possible that opposite interpretations of the policy might be announced by the federal and state courts. For the federal court, in a judgment not binding on Orteca, might determine that petitioner was not obligated under the policy, while the state court, in a supplemental proceeding by Orteca against petitioner, might conclude otherwise." Id. at 274. The Court then concluded that: "Thus we hold that there is an actual controversy between petitioner and Orteca, and hence, that petitioner's complaint states a cause of action against the latter." Id.

It could be argued that the above concern and holding obtain here.  Alabama law, 1975 Ala. Code §§ 27-23-1 and 27-23-2, allow a victim, under some circumstances, to recover directly from an insurance company for the acts of its insured.  See <u>Melco Sys. v. Receivers of Trans-Am. Ins. Co.</u>, 268 Ala. 152, 161 (1958).  The Alabama Supreme Court has held that "defenses to liability available to the insurer in an action brought by the insured would also be available to the insurer in an action" under those provisions.  <u>Files</u>, 10 So. 3d at 534-35.  Thus, should the homeowners prevail in the state court, the same defenses enjoyed by Penn National in this federal declaratory judgment action could be enjoyed by the insurance company in a post-judgment action brought by the homeowners against the insurance company, and "opposite interpretations ... by the federal and state courts," <u>Maryland Cas. Co.</u>, 312 U.S. at 274, of the policies at issue should be avoided.

Moreover, now that the court has found that Penn National should prevail in all respects, it is not clear

24

that the insurance company would still want to question the homeowners' standing. After all, if the homeowners lack standing to challenge the relief sought in this case, it could be argued that they are not bound by this court's holding in favor of Penn National in all respects and thus, if they prevail in state court, could later pursue an action against the insurance company as to whether it has a duty to indemnify that state-court judgment.

However, resolution of the homeowners' standing is unnecessary in this case. As this court has already explained, although the Watts entities have not opposed Penn National's summary-judgment motion, this court is still obligated to determine independently whether the motion is due to be granted against them. See Livernois, 837 F.2d at 1022. Thus regardless of whether the homeowners have standing, the court would still have to engage in the above analysis as to whether Penn National is entitled to summary judgment in its favor as to both its duty to defend and its duty to indemnify, and the

outcome would be the same.  As such, the court need not reach the homeowner's standing to oppose that relief.

***

In accordance with this opinion, an appropriate judgment will be entered granting summary judgment in favor of Penn National and declaring that the insurance company has no duty to defend or indemnify the Watts entities with regard to the state lawsuit.

DONE, this the 13th day of March, 2014.

/s/ Myron H. Thompson
UNITED STATES DISTRICT JUDGE